**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN COURTHOUSE**

| | |
|---|---|
| Erzen Krivca, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> - against - <br><br> CVS Pharmacy, Inc., <br><br> Defendant | 1:22-cv-10468 <br><br><br> Class Action Complaint <br><br> Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. CVS Pharmacy, Inc. ("Defendant") manufactures, labels and sells toothpaste promoted as "Fluoride Free" and "Antiplaque [& Whitening]" that is "Certified Natural" under the CVS Health brand ("Product").



### I. ANTIPLAQUE CLAIM

2. Plaque is a film of bacteria which adheres to teeth and plays a critical role in development of caries and gingivitis.

3. Gingivitis is a form of gum or periodontal disease that causes irritation, redness and swelling (inflammation) of the gingiva, the part of the gum around the base of teeth.

4. Accumulation of plaque is associated with gingivitis, which is why removing plaque is important for oral health.

5. The two types of plaque control mechanical and chemical.

6. Mechanical methods rely on abrasive materials added to dentifrices to facilitate removal of plaque and debris from teeth.

7. This is inadequate to remove plaque to an extent considered of therapeutic benefit.

8. Chemical methods are based on antimicrobial or chemical activity.

9. Stannous fluoride is proven to remove plaque via its antibacterial properties, thereby preventing and reducing gingivitis.

10. However, an increasing number of consumers are seeking toothpastes without fluoride, based on beliefs it is harmful.

11. Based on the statements, "Fluoride Free" and "Antiplaque," consumers like Plaintiff expected the Product would contain fluoride alternative ingredients to remove or reduce plaque to affect gingivitis.

12. While the ingredients do not include fluoride, they do not contain any comparable active ingredients which remove or reduce plaque, thereby preventing gingivitis, by non-mechanical means.

> **Ingredients:** Dicalcium Phosphate Dihydrate, Water, Xylitol, Calcium Carbonate, Glycerin, Flavor, Xanthan Gum, Sodium Bicarbonate, Stevia Rebaudiana Leaf/Stem Extract, Quillaja Saponaria Molina

**Ingredients:** Dicalcium Phosphate Dihydrate, Water, Xylitol, Calcium Carbonate, Glycerin, Flavor, Xanthan Gum, Sodium Bicarbonate, Stevia Rebaudiana Leaf/Stem Extract, Quillaja Saponaria Molina

13. Though the first ingredient, dicalcium phosphate dihydrate, has been shown to reduce supragingival plaque and gingivitis more significantly than when brushing only with water, this was due to its function as an abrasive to assist plaque removal.

14. The FDA has concluded that dicalcium phosphate dihydrate is not effective for use as an antigingivitis agent because there is no evidence that it chemically interferes with plaque formation or removal.

15. The eighth ingredient, sodium bicarbonate, has been shown to exert an antibacterial action on several oral microorganisms, but only in high dosages and with extended exposure time.

16. When used in toothpaste, sodium bicarbonate is not effective at reducing plaque or gingivitis.

17. Consumers buying the Product expect it will contain non-fluoride ingredients that have a therapeutically significant effect in reducing plaque and acting against gingivitis.

18. While the label is permitted to describe the Product's antiplaque ability, related to its abrasive ingredient, the "fluoride free" claim tells consumers that its antiplaque qualities will be based on fluoride alternatives, when this is false.

19. The Product's ingredients are not capable of achieving a clinically significant

reduction in gingivitis.

20. Consumers are misled to expect not only will the Product be "antiplaque," but that it will effect gingivitis when this is false.

## II.   NATURAL CLAIMS

21. The Product is promoted as "Certified Natural" by the Natural Products Association ("NPA"), whose standard requires "Th[e] [P]roduct must be made up of 95 percent truly natural ingredients or ingredients that are derived from natural sources, excluding water."



22. The representation that the Product is "natural" is misleading.

23. Consumers understand the front label statement of "Certified Natural" to mean all the ingredients are natural.

24. Only if they turn around the package will they see the NPA definition that is

4

inconsistent with their expectations.

25. This is because it allows for five percent non-natural ingredients and considers ingredients derived from natural sources as natural.

26. Consumers expect that natural ingredients will not just be derived from natural sources, but subject to minimal processing.

27. The Product's ingredients are all, except water, subject to significant processing such that consumers would not consider them natural.

28. Even accepting that 95% of the ingredients are natural or from natural sources, this is misleading because its most functionally significant ingredients, albeit not capable of effecting gingivitis, are neither.

### III. PEPPERMINT

29. The front label picture of peppermint is misleading because the ingredient list does not indicate peppermint oil or peppermint extract.

30. To the extent the Product contains any peppermint, the amount is de minimis or negligible as part of the "Flavor" ingredient.

### IV. CONCLUSION

31. The Product contains other representations and omissions which are false and misleading.

32. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $4.99 for 5.5 oz, excluding tax and sales.

<u>Jurisdiction and Venue</u>

33. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

34. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

35. Plaintiff is a citizen of New York.

36. Defendant is a Rhode Island corporation with a principal place of business in Woonsocket, Providence County, Rhode Island.

37. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

38. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here, in thousands of CVS stores and online, in the States Plaintiff seeks to represent.

39. 85% of Americans live within 10 miles of a CVS.

40. CVS stores get close to 5 million customers a day, which means only 0.00002 percent of these people would need to purchase the Product per day to exceed the 100 person requirement.

41. Venue is in this District with assignment to the Manhattan Courthouse because a substantial part of the events or omissions giving rise to these claims occurred in New York County, including Plaintiff's purchase, reliance on the identified statements, and subsequent awareness these were false and misleading.

### Parties

42. Plaintiff Erzen Krivca is a citizen of New York, New York County, New York.

43. Defendant CVS Pharmacy, Inc. is a Rhode Island corporation with a principal place of business in Woonsocket, Providence County, Rhode Island.

44. Founded as Consumer Value Stores almost sixty years ago in Massachusetts, CVS has consistently been a place for consumers to fill their most important needs.

45. Originally selling a variety of goods, CVS became focused on meeting the healthcare needs of Americans and is a leading pharmacy and healthcare company.

46. From the almost ten thousand CVS stores in all 50 states, consumers have confidence CVS is looking out for their health.

47. Consumers consistently rank CVS as giving them the most value for their money, in addition to relying on the advice of their trained staff and pharmacists.

48. According to surveys, the CVS brand enjoys a high level of trust from the public, more than other national pharmacies.

49. CVS has been known for its values and unique approach to business and community, through its ethics, transparency to investors and customers, and philanthropy.

50. While CVS stores sell leading national brands, they also sell a large number of products under one of their private label brands, CVS Health.

51. Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

52. Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

53. Products under the CVS Health brand have an industry-wide reputation for quality and value.

54. In releasing products under the CVS Health brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

55. Defendant is able to get national brands to produce its private label items due its loyal customer base and tough negotiating.

56. That CVS Health branded products met this high bar was proven by focus groups,

7

which rated them above the name brand equivalent.

57. Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

58. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

59. Private label products under the CVS Health brand benefit by their association with consumers' appreciation for the CVS brand as a whole.

60. The development of private label items is a growth area for CVS, as they select only top suppliers to develop and produce CVS Health products.

61. The Product is available to consumers in this District from Defendant's retail stores and website.

62. Plaintiff purchased the Product at CVS locations including 387 Park Ave S, New York, NY 10016, between 2021 and 2022, and/or among other times.

63. Plaintiff read the statements "Fluoride Free" and "Antiplaque" and expected the Product's ability to remove and/or reduce plaque was connected to its ability to reduce gingivitis.

64. Plaintiff read the statement "Certified Natural" and expected all the ingredients were natural which he understood as being from natural sources and minimally processed.

65. Plaintiff saw the picture of peppermint and expected a non-de minimis and non-negligible amount of this ingredient.

66. Plaintiff bought the Product at or exceeding the above-referenced price.

67. Plaintiff paid more for the Product than he would have had he known the above-referenced facts or would not have purchased it.

68. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

69. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, features, and/or components.

Class Allegations

70. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Texas, North Dakota, Wyoming, Idaho, Alaska, Iowa, Mississippi, West Virginia, Arkansas, South Carolina, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

71. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

72. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

73. Plaintiff is an adequate representative because his interests do not conflict with other members.

74. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

75. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

76. Plaintiff's counsel is competent and experienced in complex class action litigation

and intends to protect class members' interests adequately and fairly.

### New York General Business Law ("GBL") §§ 349 and 350

77. Plaintiff incorporates by reference all preceding paragraphs.

78. Plaintiff saw and relied on the label to believe the Product contained fluoride alternative ingredients to achieve a therapeutically significant reduction in plaque and gingivitis by non-mechanical means, was natural, and contained peppermint.

79. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Violation of State Consumer Fraud Acts
### (Consumer Fraud Multi-State Class)

80. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

81. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

82. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

### Breaches of Express Warranty,
### Implied Warranty of Merchantability/Fitness for a Particular Purpose
### and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

83. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained fluoride alternative ingredients to achieve a therapeutically significant reduction in plaque and gingivitis by non-mechanical means, was natural, and contained peppermint.

84. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

85. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which was the absence of fluoride yet fluoride-equivalent ingredients, natural ingredients and real peppermint.

86. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it contained fluoride alternative ingredients to achieve a therapeutically significant reduction in plaque and gingivitis by non-mechanical means, was natural, and contained peppermint.

87. Defendant's representations affirmed and promised that it contained fluoride alternative ingredients to achieve a therapeutically significant reduction in plaque and gingivitis by non-mechanical means, was natural, and contained peppermint.

88. Defendant described the Product so Plaintiff believed it contained fluoride alternative ingredients to achieve a therapeutically significant reduction in plaque and gingivitis by non-mechanical means, was natural, and contained peppermint, which became part of the basis of the bargain that it would conform to its affirmations and promises.

89. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

90. This duty is based on Defendant's outsized role in the market for this type of Product, custodian of the CVS Health brand.

91. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

92. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

93. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

94. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

95. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained fluoride alternative ingredients to achieve a therapeutically significant reduction in plaque and gingivitis by non-mechanical means, was natural, and contained peppermint.

96. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected that it contained fluoride alternative ingredients to achieve a therapeutically significant reduction in plaque and gingivitis by non-mechanical means, was natural, and contained peppermint, and he relied on its skill and judgment to select or furnish such a suitable product.

### Fraud

97. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was "fluoride free" and contained fluoride alternative ingredients to achieve a therapeutically significant reduction in plaque and gingivitis by non-mechanical means, was natural, and contained peppermint, and he relied on its skill and judgment to select or furnish such

a suitable product.

98.     Defendant knows the claims are not authorized and may mislead consumers because it has a large compliance department which presumably checks the labeling on its private label products.

## Unjust Enrichment

99.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable attorney and expert fees; and

4. Other and further relief as the Court deems just and proper.

Dated:   December 12, 2022

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com